Good morning. May it please the court, government counsel, my name is Gerald Needham. I'm an assistant federal defender in the District of Oregon. I represented the appellant, Dan Tompkins, at trial in this matter. Mr. Tompkins was convicted of felon in possession of a firearm. He was sentenced by the District Court pursuant to the Armed Career Criminal Act. He was sentenced to 180 months, and Mr. Tompkins is appealing that sentence. The District Court relied on three predicate convictions that do not qualify as crimes of violence under the Armed Career Criminal Act. I'd like to address all three of those convictions. Weren't there four, actually? Two burglary charges? Well, that's one of the questions this court has to decide whether or not they are, in fact, one conviction or two convictions, because if you look at the judgment in this case, the judgment indicates they're both on the same day and there's no determining factor that they were committed separate and apart. But we'll get to that, Your Honor. They're at different locations, though, right? Pardon me? The two burglaries in Oregon are at different locations, different victims, different premises? Well, we don't know that. That's what the information alleged in this case. Mr. Tompkins received the information when he made his initial appearance without counsel. In the excerpt of record, I believe it's 205. I've seen the information. I'm sorry? I've seen the information, and it alleges different street addresses. It does, Your Honor. Yes, the information does allege two separate occasions, two separate locations. What I'm getting at is when Mr. Tompkins made his initial appearance, the magistrate who took the initial appearance. I'm sorry, you're talking about initial appearance in Oklahoma? Yes. Okay. Initial appearance in Oklahoma in excerpt of record 206. He's without counsel, and the magistrate, the form that they use says, whereupon the court explained the charges in the preliminary information. There's a line read and explained, and apparently the court or someone crossed out read. So there's no record that the charges were ever read to Mr. Tompkins. And the magistrate told him and says, here, you know what you're charged with, and simply burglary in the second degree, two counts. Yes, he had a copy of it. The preliminary first appearance before a magistrate, summary of fact sheet indicates he had a copy of it but was never read to him. Mr. Tompkins is then appointed counsel, because the matter had been continued for a preliminary hearing. Counsel and Mr. Tompkins waived the preliminary hearing, and then I believe six days later he appeared and pled guilty. And the only document we have is an arraignment summary of facts plea of guilty form, which is a two-page form. There's no transcript of the proceeding. The government did not. I think I looked. Pardon me? Maybe I have this wrong, but I thought I looked at that form, and that it said he agreed to the charges. Well, it said in paragraph 21, do you plead guilty of your own free will only for the reasons that you are guilty and you admit that you did all the facts charged, and is yes. And the only charges listed in this document you're charged with in paragraph 4, do you know you are charged with? Two counts burg two. That's the only information that's in this document. Well, where else would those counts have been? I mean, where do they come from if they didn't come from the information? Well, it comes from the burglary two statute from Oklahoma. That's what he pled guilty to. Well, no, but I mean, he says he knows he was charged with two counts of burglary. He pled guilty to them, and the judgment shows that he was dead of count one and count two. Of what? I mean, I'm having trouble tracking the argument. It has to have been count one and count two of the information. There's no other thing in the air that has that kind of structure. Yes, it has a structure. Burglary two, Oklahoma statute, we know is a non-generic. Well, no, he had an information which charged him with specific entry into a particular building. Yes. Count one and another particular discrete building with respect to count two. So when he says he knows he was charged with two counts. Knowing you're charged with two counts is much different than admitting those specific facts in that charging instrument. And there's no record that those informations were read to him on the record and that he consented and admitted those facts. Counsel, he says that we've got the questions. The court read and explained the charges. Do you know you're charged with two counts? Yes. Have you and your lawyer had a copy of the charges? Yes. Do you wish to enter your plea? He says yes. How do you plead? Guilty. Do you plead guilty of your own free will for the reasons that you are guilty? He's written yes. What are we supposed to do with that? We're not supposed to believe him now? Are you going to tell us that he changed his mind? No, I'm not saying he changed his mind. I'm saying that the only information that this court can rely on is a record that he admitted the facts of a generic burglary because we know that the Oklahoma statute is a non-generic statute because you can be convicted under the Oklahoma statute of breaking and entering any structure or erection in which properties kept or forcibly opening coin-operated vending machines, trucks, trailers, vessels. Counsel, the count says building. In count one and count two, it says a building. Yes. It's an address. It's not a vending machine. It does say that. It does say that. It says that he opened a vent in one count and an air conditioning. Right. It could have been construed that Mr. Tompkins was opening just those areas and not entering a building, that it was just a structure that he was entering under the Oklahoma statute. The point is, because of this statute, you go to the modified categorical approach, and under the modified categorical approach, it's a rigorous standard where the government must meet its burden by clearly and unequivocally showing that Mr. Tompkins emitted all the elements of a generic burglary. I just don't see how that's not just perfectly clear from exactly the language that Judge Bybee read to you. What else are you supposed to take from that? You look at the judgment of the court in Oklahoma. Yes, I do look at the judgment. He pled to count one and count two, which can only be of an information, okay, or an indictment, or whatever one wants to call the charging document. Charges don't just come in the air under a statute. The indictment could have said you're charged under the Oklahoma statute with burglary. We've had plenty of those cases. That wouldn't qualify. But here, the charging document is quite specific. You entered two discrete buildings. Your Honor, the judge ---- Why can't we take that at face value? Yeah. Well, the charging document here is an information. And when he received that information, he didn't have counsel. Then he waived presentation to a grand jury. So he was never charged with an indictment. So he pled under the ---- So ---- The only information that we have, he pled under the Oklahoma burglary two statute. He pled to the information, and it said he entered a building with a discrete address. If, in fact, there was a record that he pled to the information. There's no record of that. Okay. Yeah, I mean, obviously that's ---- If you look at the judgment and what Shepard and Taylor tells us, that the court must look at the reliable information. And that is the, first of all, the charging document. Sure, that is one. But this court has said under Kelly and Corona-Sanchez and Franklin that you can look at the charging document, but you must consider that in conjunction with the plea agreement or the judgment or a transcript. There's none of that here. The judgment here is simply burglary in the second degree. It gives us just Mr. Tompkins' dates and when he pled guilty, but it doesn't tell us ---- But it says he pled guilty to count one. That's a separate judgment. And count two, and that's a separate judgment. Judge, on an excerpt of record of 211, they have the judgments, and it doesn't ---- Yes. It says ---- Up in the upper right-hand corner, as I recall, it says count one, and one of them says count two. Correct. Of the two counts of burglary in the second degree, but they don't reference the information that Mr. ---- That's of a generic burglary. Okay. I'm with you. The second conviction that the district court relied on was the attempting to elude a police officer under Oregon Statute 811.540. This court has answered the question of whether or not that statute qualifies as a violent felony under the Armed Career Criminal Act. Most recently, in the Peterson case, it's a memorandum decision. I cited that in my 28-J letter. The court cited Kelly, which analyzed a Washington State attempting to elude statute and found that it does not categorically qualify as a crime of violence under the Career Offender Guideline. Now, the interesting thing is that the Washington statute contains much more egregious conduct than the Oregon statute. The Washington statute requires a wanton or willful disregard for the lives or properties of others. There is not a requirement in the Oregon statute. Kelly is cited by Jennings in this court, saying that it's precedent, and just recently Peterson. We don't have to go to the modified categorical analysis in this case, because when we look at the initial pleading document, what happened here, Mr. Tompkins was convicted after trial. A review of the indictment in that case shows that simply the allegation was that he was operating a vehicle, he was given a visible and audible signal to stop by police officers, and that while still in the vehicle he attempted to flee. Now, just on the face of the statute that Mr. Tompkins was convicted of, it's not a crime of violence. Mr. Needham, you have three minutes 37. Do you want to reserve rebuttal time? About a minute, Your Honor. I just wanted to get to Begay does not change the analysis under the attempting to allude, as there's no requirement that the offense be committed in a personal, violent, or aggressive manner. The final conviction is Mr. Tompkins' conviction for escape in the second degree. There again, he went to trial in that case. And the charging instrument simply alleges that Mr. Tompkins was in custody of the Josephine County Sheriff's Department, as a result of a conviction, and he escaped. Now, the court there instructed the jury that an escape is an unlawful departure of a person from the custody of a correctional facility. And a correctional facility is defined by any place used for the confinement of persons charged with or convicted of a crime or otherwise confined to a court order. So that is simply like what occurred in chambers, a walk away. That's what the jury had to find that Mr. Tompkins was committed, and that was how they were instructed. So our position is simply that he could have been in the custody of home confinement. He could have been halfway house. The jury did not have to find that he was in a locked, gated correctional facility. All they had to find is that he was confined somewhere under a court order and that he escaped. And under chambers, that is not a crime of violence. I would just reserve my remaining time then. Thank you. Thank you. Okay. If these court counsel, my name is Doug Fong. I represent the United States in this matter. I just wanted to say a couple of things about the burglary convictions to start out with. In fact, his first appearance documents indicate, and this is ER 206, that the court, while the court may not have read the charges to him, it says the court explained the charges in the preliminary information in paragraph four, and he answered yes. And then paragraph five says, have you had a copy of the charges? And he answered, yes, I do. I have it right here. When he signed the waiver of preliminary hearing form, that is ER 208, he also acknowledged that he was advised and read and explained the charges brought against you, and that is in paragraph one. But most telling, obviously, there are no other charges to plead to other than the charges in the information. But even in his plea petition, if you look carefully at paragraph ten, it refers not just to the Berg II charges that arise out of nowhere, but, in fact, the chart talks about having to prove that you're guilty of the crime charged and also that a plea of guilty to the charges in the information. So paragraph ten specifically refers to the charges in the information. But particularly in this case, there's no issue about what charges he pled to. And this is not a case such as, say, that was encountered in Mayer, where we have the Oregon statute defines building broadly. In fact, the Oklahoma statute specifies building separate and apart from other structures, vehicles, and so forth. So when you use the modified categorical approach, looking at the charging instrument, there is no issue whatsoever that that alleges a generic burglary as a felony. Counsel, should we be concerned about the fact that these appear to have been adjacent businesses that were burglarized on the same evening? Yes, Your Honor, you should be concerned about that. And basically our proof in this case of that, and realize that's not a tailored issue itself. It's more of a proof of, well, are these separate occurrences? And that's why we went through the pains of pointing out that, you know, they are adjacent businesses, but they are different addresses, different victims, different businesses, but even equally important, different means of entry. And so, in other words, this is not a situation where you have one entry into two places. You have different means of entry, one through, I think it was like an air conditioner duct. Well, the language that the indictment uses or the information uses is fairly similar. One of them says an air vent cover on the roof, and the other one says an air conditioned vent on roof. That's correct. Those are, that's, I'm not sure what the difference is between those two. Well, in fact, you know, I suppose that if they were the same, they would have charged the same means of entry. But I think our point is that they are charged differently, and I'm not sure how many different ways you can describe air vents, but at least by all indications from the information that they are different means of entry. Now, that's certainly one thing. Does the record, Mr. Fong, show the times of these entries or burglars? The record does not show the time. Just on the same day. That's correct. I don't know if they're 60 seconds apart or two hours apart. We don't know if they're two seconds apart or 60 seconds apart or two hours apart. Actually, I may have just misled all of us here. I don't see that there's any, and even the date listed on here for either of the events. They could have been on different days for all we know. I had been, I've been laboring under the assumption that they were on the same day, but now that I look at it, I don't see that there's a time or a date specified there. No, Judge, if you look at the top of the information, it says on or about April 16th, 1983. Okay, I see it. All right. And so that date would apply to both counts. But regardless, we think that this case really is right on point with this circuit's decision in Phillips, where so long as there's some evidence that these are not simultaneous events, in fact, and that they are successive as opposed to simultaneous, then they should be treated differently, even though the time frame may be close at hand. And we think that that's probably most telling because you've got consecutive sentences and two separate counts. So the question I have is, if we reject Pellant's argument that you can't look at the information, then if we look at the information, is it clear that the building under the statute involved is a generic burglary under the Taylor standard? Yes, we're absolutely clear about that. And the reason is because of how Oklahoma uses the term building. Unlike Oregon's definition where they define building to include building in its normal sense, as well as structure, vehicles, motorhomes, things like that, Oklahoma law is very specific. They define burglary as any building or any part of any building, or any part of any building, room, booth, tent, or railway car. So they actually talk about building versus railway car and other items. Now, if the indictment just said he's charged with burglary in the second degree without specifying anything else, then we certainly have a problem. But because they separate building in their definition from these other events, it's pretty clear that this is a generic building, using building in its normal sense. With respect to the escape in the second degree conviction, I think that's somewhat problematic for the government in this sense. We think that the defense is correct in that the definition of correctional facility in Oregon is very broad. And that's not necessarily apparent from the materials that you have, but it is broad. If your honors were to strictly adhere to Taylor, and I think the Supreme Court in James viewed Taylor as being restrictive, if you just look at the charging instrument and the jury instructions, then we probably lose on that. What's interesting about James, though, is that they go on to say, well, in situations where the defendant pleads guilty and you don't have jury findings, you can look to other things. And that would be like the plea colloquies and factual findings by the trial court or the judge that takes the plea. And what's unusual about this case is if you look at those comparable things in this defendant's escape conviction, we were fortunate enough to have the whole record, not just the jury instructions, but this defendant's statements that he made during the course of the trial. And so, for instance, if you were to consider his admissions that he made during his closing argument, he admits basically he says, I agree with practically everything that the prosecutor says in this case, and really the only issue is did I make it out of the Josephine County jail or not. If you were to consider those things, it's abundantly clear that, in fact, this was a custodial escape from a correctional, from a jail or prison, which would certainly be a violent felony under the Begay analysis and the analysis that this court has had in Savage as well as other circuits. But we think that the critical issue here is if you feel, if you read Taylor restrictively, that you can only consider the information or the indictment and the jury instructions without anything else in the trial that was presented, then the government probably loses on that. The jury under the escape clause would not have had to find that there was any risk of harm. Is that correct? No. And can we infer that if we know that it's a custodial institution as opposed to, say, a halfway house? That's correct. And that's exactly what this court said in Savage, at least as it applies to Begay's first prong, and that's basically what Chambers, the Supreme Court in Chambers, implied that when you do have a custodial escape, it inherently creates a serious potential risk of physical injury to other people because of the nature of the confrontation, the nature of the defiance of authority, and so forth. And so with regard to Begay's second prong, you can certainly find that. I think the real issue here, though, is, well, do we have the appropriate facts to consider to make that particular finding? Finally, I wanted to address the attempt to allude statute. The counsel refers to United States v. Phillips. I know, Judge Bybee, you were on that particular panel. You mean Peterson? I'm sorry. Yes, that's correct, Peterson. A mandate has not been issued in that case, and so basically it's kind of in limbo. But it's real clear, at least because of most of Peterson's authority and particularly the authority with Kelly and Jennings, that was all pre-James and pre-Begay. And so, therefore, it appears that the Supreme Court has overruled the analysis in Kelly because what the Ninth Circuit did in Kelly was to focus in and say, well, if you could have done certain things, committed this crime, without creating a risk of physical injury to a person, then this must not be a categorical crime of violence. And that particular approach has- How would this panel get around Peterson? Well, Your Honor, there are actually quite a few ways you can get around it. First, Peterson is not controlling authority at this point because the mandate hasn't issued. But, in fact, Peterson relies specifically on Kelly and Jennings in its holding and didn't address the issue of whether or not the Supreme Court has overruled the analysis in Kelly and Jennings. You're suggesting that the panel here should find that James and Begay overruled Kelly, and because Peterson relied on Kelly, that Peterson as well is no longer good law. That's correct, Judge. Pretty aggressive on our part, isn't it? Well, that's what you're- It was a very generous invitation, Counsel. Well, it seems to me that that's an option that this Court certainly has. But I think even more telling in this case, Your Honors, is this, is that Kelly and Jennings, which Peterson really relies on, only dealt with one part of Washington's attempt to elude statute. And realize this, we cite the other circuit cases and whatnot, but not all attempt to elude statutes are created equal. And what this Court has to do is to analyze each specific one to decide, well, what are the inherent risks involved in these cases? But Kelly- If we accept your argument on the Oklahoma burglary and then reject appellants, isn't that the end of it? That would certainly be the end of it, Judge. So we wouldn't have to address eluding or escaping. That's correct. Your Honors would have that option. If Your Honors decided that, in fact, the Oklahoma convictions were sufficient, then we're done here. So isn't really the crux of this appeal whether in pleading guilty the- is sort of bound by what that information said? Yes. And, in fact, I think we cite the Ninth Circuit cases when he pleads guilty, that's basically an admission of each and every element of the offense, in particular when he's found guilty. And, in fact, to take that even a step further, we cite some cases where the person doesn't necessarily have to plead guilty. The person can plead no contest to the offense. And that's not necessarily an admission of the elements of the crime, but yet that's a conviction on each and every- at least that establishes of a crime that contains, in this case, elements of the generic burglary. The thing I wanted to say about the attempt to elude statute is Kelly and Jennings did not analyze whatsoever the inherent risk created when people flee police officers. And particularly in this case where the Oregon statute not just requires flight to avoid the apprehension, but also requires from the police's end a pursuit. So in order to be convicted in Oregon, you have to not just have flight, but you have to have pursuit by a police officer as well. Kelly and Jennings did not address that issue whatsoever, even though it's in the Washington statute. And Kelly and Jennings just simply said, well, if you could commit this crime just simply by endangering property and not persons, then that shouldn't fall into this category. But we know that that's certainly wrong after James and particularly after Begay. When you do this analysis, all those cases indicate, really,  that your honors basically have to find that at least Begay's first prong is met. You have Savage, which says an escape is certainly a crime of violence. You have James and Mayer, which say burglaries are also crimes of violence. None of those cases, none of those statutes have any element of risk of serious physical injury. But what's important is to focus on, well, does the conduct prescribed here, does that create a serious potential risk of physical injury in the case? Not whether the element, the crime has as an element that type of risk, but whether the conduct itself in the ordinary case creates that kind of risk. In the case that we cite, for instance, West, certainly flight from police officers is different, say, than, say, flight out of fear. Flight from police officers is an aggressive type of action. It's offensive. It's a defiance of authority. Whereas, for instance, if I scare a deer from my garden and he's fleeing to get away, I have no interest in chasing him. He's not necessarily defying my authority to stop. And so there's two types of flight. But in this case here, the flight is certainly defiant, and that's why the other circuits indicate that it's violent and aggressive. That's all I have, unless you want to ask any other questions. Okay. Thank you, Mr. Fox. Any questions? Judge Reimer or Judge Bison? No. All right. Mr. Needham, we have some rebuttal time. Of course, the Peterson panel was aware of James and cited Begay. I think it's kind of silly to say that because the statute says the officer has to pursue somebody, that that makes it a crime of violence. I mean, the Washington state statute, all of the eluding statutes, assume that a police officer is going to chase someone if they try to elude them. I mean, that's common knowledge. The police aren't just going to let someone go. They try to stop them, and they take off and just let them go. So I think Peterson is right on point. It cited Kelly. It cited Jenkins. That's the law in this circuit. In regard to the escape, there's no finding by the jury that they relied on Mr. Tompkins' closing argument. All they had to rely on was the jury instructions from the court, and the jury instructions from the court don't make the conviction more than a walk away under Chambers. But most importantly ‑‑  I'm sorry? Under the modified categorical approach? I don't believe so, neither, Your Honor. That we couldn't under our pressure? But under the burglary, it's a categorical, modified categorical analysis that we have to do. I think everyone agrees about that. Now, we don't have a record of what Mr. Tompkins admitted. All we know is that he pled guilty to two counts of burglary. The argument is, oh, it must relate back to the information, although there's no record that he admitted the facts in the information. If you look at the information, it indicates, as the courts have indicated, Judge Bybee pointed out, that he was breaking into an air vent cover on the roof on one and an air conditioner, supposedly, on another. The judge taking that plea could have accepted that plea if Mr. Tompkins said, well, I wasn't trying to break into the building. I was trying to steal something from the roof or the vent. And that would have been enough under the Oklahoma statute to make him guilty. But it wouldn't have been a generic burglary under the Taylor analysis. So ‑‑ but this is all speculation because that's what we're doing here because we don't have a record of what occurred in Oklahoma. All we know is that he pled guilty to two counts of burglary in the second degree. Just because a defendant pleads guilty doesn't mean that he admits all of the elements in the charging document. It's like a drug case where you can plead guilty to distribution of drugs, but not the amount alleged in the indictment. The jury would still have to ‑‑ the government would still have to prove that beyond a reasonable doubt. So there's many crimes when you can admit pleading guilty, but not all of the elements alleged in the indictment. So my position is that there's no record that Mr. Tompkins admitted the facts of a generic burglary. Okay. Thank you, Mr. Needham. Thank you, Your Honor. Unless there are questions, Tompkins or U.S. v. Tompkins shall be submitted. And the court shall adjourn at this time until tomorrow. All right? So we'll call an argument session, and we'll see you a little later. All rise.
judges: Rymer, Gould, Bybee